(No. 28152.—

CHARLES HORN *et al.*, Appellees, *vs.* ORMOND W. THOMPSON *et al.*, Appellants.

*Opinion filed January 17, 1945.*

BRYANT, ROBERTS, HWASS & COLWELL, and HENRY L. WELLS, both of Chicago, for appellants.

HERBERT A. SCHRYVER, of Chicago, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellees filed their complaint in the superior court of Cook county against appellants, seeking to establish and quiet title of appellees to a certain small strip of property located at 546 Long avenue, Chicago, and to enjoin tearing down a fence which appellees placed on what is alleged to be the dividing line between a certain four-foot strip and a three-foot strip lying adjacent thereto on the south. Appellees claim agreement to establish the line in 1914 and use since in accordance therewith. It is claimed by appellants that a certain sidewalk and fence, built by appellees, encroach upon the three-foot strip, the fence to the extent of approximately 10 inches on the east and 12½ inches on the west end, and the sidewalk to the extent of 6⅞ inches on the east and 11½ inches on the west.

There is no dispute as to the purchase of the property. One Thomas L. Wilson owned three lots known in the record as lots 33, 34 and 35, lot 33 being the north lot. These lots extended east and west and were 150 feet in depth. Lot 33 was 27 feet wide. Lot 34 was 26 feet

wide and lot 35 was 31 feet wide. The property of appellees, title to which is not disputed, is described in a deed dated March 24, 1914, by one Pearl D. Halls, as grantor, as the east 102 feet and the north 4 feet of the west 48 feet of lot 33, etc.

Appellants own lots 34 and 35. The deed offered in evidence describing their property is a trustee's deed dated February 13, 1942. The property purchased by appellants is described as the east 105 feet of lots 34 and 35 and the east 3 feet of the west 48 feet of the south 23 feet of lot 33 and the south 3 feet of the north 7 feet of the west 45 feet of said lot 33. The south 3 feet of the west 45 feet of lot 33 is adjacent to and south of the 4 feet of said 48 feet deeded to appellees. It is the line between the four-foot and three-foot strips that is involved here, and it is upon this three-foot strip that the encroachment of the fence and sidewalk is said to occur.

Appellees claim the right to relief prayed on the ground that in 1914, at the time they purchased lot 33, Wilson, the then owner of lots 34 and 35, and Mrs. Halls, the owner of lot 33, entered into an agreement with appellees fixing the dividing line between the four-foot and three-foot strips as beginning at an iron stake near a gatepost located at the southeast corner of this four-foot strip and extending west to the alley. It is upon this line that the fence was later built. The south edge of the walk was laid a few inches north of that line. There is no contention on the part of appellants that appellees are not entitled to the north four feet of the west 48 feet of lot 33 described in their deed from Mrs. Halls, nor is it claimed that the appellants do not own the remainder of the three-foot strip lying south of the line claimed to be established by agreement.

There is no evidence in the record of any survey of these premises other than that establishing the outline boundaries of these lots. Until this dispute arose, no sur-

vey had been made to establish a line between the four-foot and the three-foot strips. The basis of appellees' complaint and prayer for relief lies in their allegations that appellants threaten to take down the fence and remove a portion of the sidewalk which encroaches upon the three feet. It is evident, from facts already stated, that this is a foolish lawsuit. No good reason appears why neighbors could not compose differences of so trifling a character, rather than engage in this expensive litigation.

As may be expected, when testifying to conversations some thirty years after they occurred, the witnesses were not in entire agreement as to the conversation regarding the dividing line between the three-foot and four-foot strips. Appellees testified that a certain iron stake was pointed out to them by Mrs. Halls, their grantor, and agreed to by Wilson, the owner of the adjoining lot, as the line between the four-foot and three-foot strips. Mrs. Halls testified that she did not remember pointing out this stake which was said to be at the southeast corner of the four-foot strip. It appears that prior to the building of the fence, in 1941, appellees and those occupying lots 34 and 35 used this entire seven-foot strip in going to the alley or to their respective lots.

The cause was referred to a master who took the testimony and recommended that relief be granted as prayed. Exceptions to the master's report were overruled and a decree was entered in accordance with those recommendations. The only questions for this court to decide are whether there was an agreement establishing the line between the four- and the three-foot strips and whether there was user as required by the rule relating to establishing a line by agreement. There is no dispute that the concrete walk as now laid, is in the exact place of a like walk laid in 1920. As shown by a survey, made in 1941, and introduced in evidence by appellants, this walk encroaches on the three-foot strip, as herein stated.

The rule relating to establishing boundary lines by agreement, as now settled in Illinois, is that when a boundary line between adjoining tracts of land is unascertained or in dispute, the owners may establish a line by parol agreement and possession in pursuance of that agreement. The effect of such agreement is not to pass title to real estate from one party to another by parol, for such cannot be done, but is to fix the location of an unascertained or disputed boundary. If the location of the true boundary line is known to the owners, they cannot by agreement change such location. There are but two conditions under which the rule applies, one is where the line is in dispute and the other is where it has not been ascertained. In either case the agreement is for the purpose of establishing the disputed or unascertained line. The rule does not apply if the intention of the parties is merely to determine the exact or true line previously ascertained. (*Jones* v. *Scott,* 314 Ill. 118; *Marks* v. *Madsen,* 261 Ill. 51; *Purtle* v. *Bell,* 225 Ill. 523; *Sonnemann* v. *Mertz,* 221 Ill. 362.) If the line be disputed or unascertained and an agreement as to the line so entered into is followed by possession, the line is thus fixed though the user has not existed for the statutory period of twenty years applicable to cases of adverse possession. *St. Bede College* v. *Weber,* 168 Ill. 324; *Grim* v. *Murphy,* 110 Ill. 271; *Berghoefer* v. *Frazier,* 150 Ill. 577.

That possession was taken, to the extent of the width of the concrete walk, is not denied. The four-foot strip was cindered and later a board walk was built which was still later followed by a cement walk, which the evidence shows was placed in the same location as the board walk and which now constitutes the encroachment. This walk was laid in 1920. There is no evidence that either appellants or their predecessor in title, objected to the location of the walk, and no question arose until the fence was put up, in 1941. That the line between the four-foot and

three-foot strips was not in dispute is clear. Was it then an unascertained line? At the time appellees purchased a part of lot 33, no survey had been made by metes and bounds, or otherwise, of the four-foot or three-foot strip. The evidence of appellees is that an iron stake was pointed out to them as having been driven into the ground at the southeast corner of the four-foot strip, to mark the boundary line, but the evidence does not disclose, when, or by whom. This stake was south of the dividing line as discovered by the survey in 1941.

Appellees testified that their grantor and Wilson, who owned the adjoining lot 34, agreed that this stake was at the east terminus of the line between the two strips. It would appear, therefore, that at that time this dividing line was an unascertained line, which the then owners, according to the greater weight of the evidence, at that time agreed upon. Appellees purchased the property with that understanding and took possession of a portion of the three-foot strip lying north of that line by constructing, in 1920, as stated, a concrete walk a few inches north of the agreed line, which they have at all times since maintained. It cannot be doubted, therefore, that so far as the walk encroaches upon appellants' three-foot strip, appellees have had possession and use of that part of the strip, from at least as far back as 1920.

Counsel for appellees argue that this amounted to taking possession to the agreed line, and cite numerous cases holding that possession in such cases need only be such possession as the nature of the property will admit of. However, under the peculiar facts of this case the question still remains whether there should be confirmed in appellees any more of the three-foot strip than that actually occupied by the walk. It is seen from the plat of the survey of the premises in 1941, after the fence was built by appellees, that the walk encroaches on the three-foot strip 11½ inches

at the west end and 6⅞ inches at the east end, while the fence erected in 1941 encroaches 12½ inches at the west end and 10 inches at the east end.

Before the fence was erected, both Harriet Thompson, appellant's predecessor in title, and appellees used the two strips indiscriminately. All used the walk for passing to and from the alley. There is no evidence that appellees had possession of any portion of the three-foot strip other than the extent to which the walk encroached upon that strip, while appellants' predecessor in title and her tenants, as well as appellees, used all parts of that strip including the walk. The concrete walk was, however, built and maintained by appellees thus evidencing the exercise of ownership over the strip lying beneath it. We are of the opinion, therefore, that appellees had, prior to the erection of the fence, taken possession and exercised ownership to the extent, and only to the extent, that the walk encroached upon the three-foot strip, to-wit, 11½ inches at the west end and 6⅞ inches at the east end, and such should be confirmed in them. Since the fence stands further south on the three-foot strip, it is not on appellees' land and they have no right to the protective aid of an injunction to prevent its removal.

The decree of the superior court is, therefore, reversed and the cause is remanded to that court, with directions to confirm in appellees that part of the three-foot strip lying under the concrete walk, and to deny the injunction to prevent removal of the fence, costs in this court to be divided equally between appellees and appellants.

*Reversed and remanded, with directions.*