(No. 16002.—Decree affirmed.)
NILSON BROS., Inc., Plaintiff in Error, *vs.* ISA W. KAHN
*et al.* Defendants in Error.

*Opinion filed October 28, 1924—Rehearing denied Dec. 4, 1924.*

1. DEEDS—*when grantee of lot does not take title to full width shown on plat because of shortage in block.* In the absence of any agreement or question of title by adverse possession, where a block has been platted into lots and the lots sold, a shortage in the block will be prorated among the several lots, and in such case the grantee of a lot will not take title to the full width shown on the plat, and he cannot rely upon his deed, which gives only the lot number, as color of title, under section 6 of the Limitation act, for such full width.

2. LIMITATIONS—*seven-year statute cannot be relied upon to give title where possession is by mistake.* Where possession is asserted to have been under color of title, the actual limits described in the writing set up as color will not be extended to embrace other land not included in the writing merely because such land has been taken possession of under a mistake and occupied for over seven years, though the grantee acted in good faith in extending his possession beyond the tract of land actually defined in his conveyance.

3. PARTY WALLS—*when party may use wall of adjoining owner without paying therefor.* Where one party erects a wall one-half on his own ground and one-half on his adjoining owner's without any agreement between them, the adjoining owner may subsequently build and use the wall for one wall of his building without paying any part of the cost of its erection, under the common law rule that a person is entitled to all improvements made on his land without his request or sanction.

4. REAL PROPERTY—*permanent improvements without consent of owner become part of the realty.* Improvements of a permanent character made on real estate and attached thereto by one having no title or interest and without the consent of the owner of the fee become a part of the realty and vest in the owner of the fee.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

OGREN & WERMUTH, for plaintiff in error.

D'ANCONA & PFLAUM, GEORGE F. BARRETT, and CHARLES V. BARRETT, for defendants in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

On November 13, 1923, plaintiff in error, Nilson Bros., Inc., (hereinafter referred to as complainant,) filed its bill for an injunction in the superior court of Cook county against Isa W. Kahn and Lucile K. Kahn, defendants in error, (hereinafter referred to as defendants,) to compel them to remove ten steel girders which they had placed in the complainant's wall. In its bill complainant alleges that it is a corporation organized under the laws of the State of Illinois, with its principal place of business at 3222 North Halsted street, Chicago, and that it is the owner of the north half of lot 5 and the south half of lot 6, in block 1, in Hambleton, Weston & Davis' subdivision of the south half of the southeast quarter of the southeast quarter of section 20, township 40, north, range 14, east of the third principal meridian, the north line of which described premises is parallel to and 308 feet distant from the center line of Davis street, (now known as Belmont avenue,) in the city of Chicago, county of Cook and State of Illinois, according to the map or plat of said subdivision; that these premises are improved by a brick building, the north line of the north wall of which coincides with the north line of these premises; that defendants owned the premises adjoining on the north those of complainant and were building a structure or structures thereon; that on November 13, 1923, without permission or consent of complainant, defendants were removing from the north wall of the building of complainant, bricks, mortar and other materials and inserting in the holes or spaces so made certain joists, girders and other building parts for use by defendants in the structure being erected by them, causing these joists, girders and other building parts to rest upon and in the wall belonging to complainant. An amendment to the bill was filed, in which complainant alleged that it is now, and for more than seven successive years last past, prior to the filing of the bill, has continuously been, in actual possession

of the premises described in the bill of complaint, under claim and color of title made in good faith. It also alleged that on March 18, 1912, Edward Otto, widower, conveyed the premises to complainant by warranty deed, a copy of which deed and of the plat of the subdivision in which these premises are located is attached to the amendment; that the location of the building is now and has been continuously the same since its erection, and that complainant has paid all taxes on the premises so occupied, each year coincident with said possession, from 1913 to 1922, inclusive.

In the answer to the bill defendants state that complainant is the owner of the north half of lot 5 and south half of lot 6 in said block, and that they are the owners of lots 7, 8 and 9 and the north half of lot 6 in said block; that these premises are north of and adjoining those of complainant, the north line of complainant's lots coinciding with the south line of defendants' lots; that the land owned by complainant is improved with a brick building, but that the north wall of that building projects over and onto the lots owned by defendants; that they are building a one-story garage on their premises; that they have caused to be removed from the north wall of complainant's building, alleged to be so projecting, certain bricks and mortar, and have inserted in the holes so made certain steel girders for use in the building being erected by them.

In answer to the amendment to the bill defendants denied that complainant has been in actual possession of the premises, under claim and color of title made in good faith, for more than seven successive years, and denied that complainant has paid taxes on the premises occupied by the building for the years 1913 to 1922. Defendants also denied that the north line of complainant's premises is parallel with and 308 feet north of the center line of Belmont avenue or that the south line of the premises is 258 feet north of the center line of Belmont avenue, and allege that the north line of the premises on Halsted street is

306.8 feet north of the center line of Belmont avenue, and at its west end, on Craft street, 307.03 feet north of the center line of Belmont avenue.

A temporary injunction was issued restraining defendants from inserting further girders in the wall. After a hearing by the court a decree was rendered finding that the equities were with defendants and dismissing the bill.

A plat of the subdivision in question, recorded in 1868, shows that there were originally twelve lots in block 1 of this subdivision along Halsted street, lots 1 to 11, inclusive, being each designated as of the width of 50 feet and lot 12 of the width of 49 feet. In 1872 lots 10, 11 and 12 were re-subdivided. It is admitted that the total number of feet in the block on Halsted street is 596.32 feet instead of 599 feet, as represented on the plat, making a shortage of 2.68 feet in the block.

On March 18, 1912, complainant purchased and received a warranty deed for the north half of lot 5 and south half of lot 6 in said block. It erected a building on these premises, the north line of the north wall coinciding with the north record line of the premises described in the deed, which line is about fourteen inches north of the line of the property described in the deed if the shortage in said lot be prorated among the twelve lots. In the absence of any agreement or question of title by adverse possession, where a block has been platted into lots and the lots sold, a shortage in the block will be prorated among the several lots. Complainant, therefore, when it received its deed, the property being described as the north half of lot 5 and the south half of lot 6, and not by metes and bounds, did not get paper title to 50 feet frontage, but only received paper title to the north half of lot 5 and the south half of lot 6 after the same had been prorated by reason of the deficiency. (*Clayton* v. *Feig,* 179 Ill. 534; *Ely* v. *Brown,* 183 id. 575; *Westgate* v. *Ohlmacher,* 251 id. 538.) Complainant, therefore, was not the owner of the fourteen inches in

question unless by agreement or by virtue of adverse possession under the limitation laws of this State.

Complainant does not claim by virtue of an agreement or twenty years' adverse possession, but claims to be the owner by virtue of section 6 of chapter 83 of our statutes, which provides: "Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title." It is clear that under this section of the statute, title to land by adverse possession can only be obtained to the extent and according to the purport of the paper title. When possession is asserted to have been under color of title, the actual limits described in the writing set up as color will not be extended to embrace other land not included in the writing merely because such land lying beyond the limits described in the writing has been taken possession of under a mistake and occupied for over seven years, although the party seeking to prescribe acted in good faith in extending his possession beyond the limits of the tract of land actually defined in his conveyance, to contiguous land. (*LaRoche* v. *Falligant,* 130 Ga. 596.) Complainant's paper title not covering the fourteen inches of land in question, it did not become the owner of the same by virtue of section 6.

Where one party erects a wall one-half on his own ground and one-half on his adjoining owner's without any agreement between them, and the adjoining owner subsequently builds and uses the wall for one wall of his building, he has a right to do so without contributing any part of the cost of its erection. (*Huck* v. *Flentye,* 80 Ill. 258.) The reason for this rule lies in the fact that at common law a person becomes absolutely entitled to all improve-

ments, without paying anything for them, when they are made without his request or sanction. (20 R. C. L. 1099.) It is a general rule that improvements of a permanent character made on real estate and attached thereto without the consent of the owner of the fee, by one having no ·title or interest, become a part of the realty and vest in the owner of the fee. 14 R. C. L. 16; *Williams* v. *Vanderbilt,* 145 Ill. 238.

Complainant having erected the wall in question upon land of which defendants had the fee, defendants were entitled to make use of the wall in the erection of their building, and complainant had no right to an injunction restraining them from inserting girders in the wall or from using the same in the erection of their building.

The decree of the superior court was proper, and it will be affirmed.

*Decree affirmed.*