CHARLES T. EVERS *et al.*, Plaintiffs-Appellees, *v.* LEONA WATKINS, Defendant-Appellant.

Fifth District   No. 78-531

Opinion filed May 23, 1979.

Spomer & Spomer, of Cairo, for appellant.

Jack Williamson, of Vienna, for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiffs, Charles T. Evers and Shirley Jean Evers, brought suit in the Circuit Court of Pulaski County against defendant, Leona Watkins, an adjoining landowner, seeking a mandatory injunction to compel defendant to remove a fence which allegedly encroaches upon plaintiffs' property. Following a bench trial, the court established a boundary line between the respective properties; found that the fence encroached upon the property; and ordered defendant to take down the fence. Defendant then filed a motion to vacate the judgment in favor of plaintiffs. The motion was denied and defendant appeals.

Plaintiffs and defendants are owners of adjoining lots in block 10 of the Main Brothers Box & Lumber Company Original Plat in the Village of Karnak. The block consists of 10 rectangular lots and is bounded on the north by Washington Street, east by Fourth Street, south by Main Street and west by Third Street. Lots 1 through 5 are located on the southern portion of the block between Third and Fourth Streets and front on Main Street. Lots 6 through 10 are located directly north of these southern lots and run consecutively along Washington Street. An alley separates the northern and southern lots. Defendant is the owner of lots 6 and 7, the two most northeastern lots in the block, and plaintiffs are the owners of lot 8

which adjoins lot 7 on the west. According to the original recorded plat made in 1905, each lot is 56 feet wide and has a depth of 132 feet to the alley.

The facts established that a walnut tree, 14 inches in diameter, is located somewhere near or on the boundary line of lots 7 and 8; that defendant has recently erected approximately 100 feet of fence along what she believes to be the western boundary of her property; and that the tree is now within her side of the fence. Plaintiffs, however, claim the fence encroaches on their property and apparently also claim equal access to the tree.

At trial, E. M. Webb, a certified land surveyor, testified that he prepared a survey of the block in question at the request of plaintiff Charles Evers. While we had some difficulty following his testimony, it is our understanding that Mr. Webb used the existing monuments set by previous surveyors as reference points and found a slight discrepancy between his survey and the original plat regarding the location of some of the outer boundaries of block 10. For example, the northeast corner of the block, which is also the northeast corner of lot 6, is apparently 13 or 14 inches east of where the original plat represented it to be. He also found that the actual measurement of the north line of block 10 is 0.28 feet less than the addition of the frontages allotted to the five northern lots on the original plat. He likewise found that the southern line of these lots contained 0.454 feet less than the aggregate amount called for in the original plat; and that the actual measurement of the southern line of the block was similarly deficient. Because of the various discrepancies, Webb readjusted the location of the boundaries of the block on his survey and apportioned the deficiencies between his measurements and the original plat among the several lots on a pro rata basis. He thereafter claimed to be able to calculate that the fence erected by defendant encroached on plaintiffs' property by approximately 10 inches and that the boundary line bisected the tree. We note, however, that the record is not at all clear how Mr. Webb conducted his survey and arrived at these results. The court, nevertheless, established the boundary line as determined by Mr. Webb and ordered the removal of the fence.

■■ The law is well established that where a tract of land is subdivided into lots, title to which becomes vested in different persons, and the actual aggregate dimensions of such lots are either less or more than the aggregate dimensions called for in the plat, the deficiency or excess is borne by all the lots in proportion to their areas as indicated by the plat. (*Nitterauer v. Pulley*, 401 Ill. 494, 82 N.E.2d 643 (1948); *Balzer v. Pyles*, 350 Ill. 344, 183 N.E. 215 (1932); *Nilson Bros., Inc. v. Kahn*, 314 Ill. 275, 145 N.E. 340 (1924); *Martz v. Williams*, 67 Ill. 306 (1873); *Francois v. Maloney*, 56 Ill. 399 (1870); *May v. Nyman*, 3 Ill. App. 3d 580, 278 N.E.2d

97 (3d Dist. 1972).) This is the so-called apportionment rule and its application necessarily requires the changing of the boundaries of all of the lots in the block to apportion the shortage or excess to each, thereby unsettling all lot lines. (*Nitterauer v. Pulley.*) As the application of this rule affects all lots, relief cannot be provided until all interested and necessary parties are joined in one action. *Nitterauer v. Pulley*; 11 C.J.S. *Boundaries* §124 (1938).

In the present case, plaintiffs urge us to sustain the trial court's ruling establishing the boundary between lots 7 and 8 in accordance with the new survey prepared by Webb. We note, however, that this survey employed the apportionment rule and changed the boundaries of every lot in block 10 and some lots in adjoining blocks. We believe it would be an inadequate and unworkable solution to apply the rule to only the litigants before us as the other lot owners would not be bound by this determination. Therefore, we hold that plaintiffs are not entitled to relief on this basis in the absence of all other necessary and interested parties.

We are aware of other methods by which a court may resolve a boundary line dispute resulting from a discrepancy between the recorded plat and the actual dimensions of the subdivision. Where a boundary line is unascertained or in dispute, it may be established by parol agreement and possession pursuant thereto, by an agreement implied from the parties' unequivocal acts and declarations followed by acquiescence for a considerable period of time, or, in the absence of an agreement, by adverse possession. (See *Cienki v. Rusnak*, 398 Ill. 77, 75 N.E.2d 372 (1947); *Purtle v. Bell*, 225 Ill. 523, 80 N.E. 350 (1907); *Clayton v. Feig*, 179 Ill. 534, 54 N.E. 149 (1899).) In this case, the record is devoid of evidence to establish either the presence of such an agreement, whether implied or established by parol, or an adverse right tending to indicate ownership for the requisite number of years.

As it remains unclear where the boundary exists between the disputed lots, we find it necessary to reverse the judgment of the trial court and remand the case for further proceedings. Upon remand, the trial court should provide the litigants with the opportunity to join other necessary parties as to warrant the application of the apportionment rule, to raise any additional evidence concerning the validity of Webb's survey, to prove the existence of an oral or implied agreement as provided in *Cienki, Purtle* and *Clayton*, and to prove adverse possession.

For the reasons stated, the judgment of the Circuit Court of Pulaski County is reversed and remanded.

Reversed and remanded.

KUNCE and KASSERMAN, JJ., concur.